Holland v St. Francis Hosp. (2026 NY Slip Op 50139(U))

[*1]

Holland v St. Francis Hosp.

2026 NY Slip Op 50139(U)

Decided on February 3, 2026

Supreme Court, Nassau County

McGrath, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 3, 2026
Supreme Court, Nassau County

Laura Holland, as the Administrator of the Estate of JOEL B. HOLLAND, Plaintiff,

againstSt. Francis Hospital, CATHOLIC HEALTH SERVICES OF LONG ISLAND, RICHARD A. SHLOFMITZ, M.D., CHS PHYSICIAN PARTNERS, P.C., JAMES MILANO, M.D., PROGRESSIVE EMERGENCY PHYSICIANS, PLLC, ROBERTO G. COLANGELO, M.D., ROBERTO G. COLANGELO, M.D., P.C., SAIRAH SHARIF, M.D., EDWARD F. LUNDY, M.D., ROBERT KATES, M.D., and NEW YORK CARDIOVASCULAR ANESTHESIOLOGISTS, P.C., Defendants.

Index No. 602830/2022

Plaintiff — Laura Holland, as Administrator of the Estate of Joel B. Holland
James K. Greenberg, Greenberg & Mukherjee, P.C. - jim@gmlawnyc.com
Jesse D. Capell, The Law Office of Jesse D. Capell, PLLC - jcapell@capelllawyers.com
Milano Defendants — James Milano, M.D. and Progressive Emergency Physicians, PLLC
Kristen Petersen, Perry, Van Etten, Rainis & Kutner, LLP - kphofer@pvrklaw.com
Ariana Kali Politis, Perry, Van Etten, Rainis & Kutner, LLP - akpolitis@pvrklaw.com
Colangelo Defendants — Robert G. Colangelo, M.D. and Robert G. Colangelo, M.D., P.C.
Loris Zeppieri, Kelly Rode & Kelly LLP — lzeppieri@krklaw.com
Michael Patrick Munro, Kelly Rode & Kelly LLP — mmunro@krklaw.com
Paul Anthony Nembach, Kelly Rode & Kelly LLP — panembach@krklaw.com
Lori Ann Marano, Kelly Rode & Kelly LLP — lamarano@krklaw.com
SFH Defendants — St. Francis Hospital, Catholic Health Servies of Long Island, and CHS Physician Partners, P.C.
Jessica M. Seyer, Aaronson, Rappaport, Feinstein & Deutsch, LLP — jmseyer@arfdlaw.com 

Christopher T. McGrath, J.

The following electronically filed documents for Motion Sequence Nos. 001, 002, and 003, listed on NYSCEF as document numbers "48" through "148," and all attachments and [*2]exhibits, have been read and considered on these motions.
Defendants James Milano, M.D. and Progressive Emergency Physicians, PLLC (collectively, "Milano Defendants") move pursuant to CPLR §3212 granting summary judgment and dismissing the Plaintiff's Complaint as to Milano Defendants; and removing the Milano Defendants from the case caption. (Motion Seq. No. 001)
Defendants Robert G. Colangelo, M.D. and Robert G. Colangelo, M.D., P.C. (collectively, "Colangelo Defendants") move pursuant to CPLR §3212 seeking summary judgment in favor of Colangelo Defendants; for entry of judgment in favor of Colangelo Defendants; and amending the caption to remove Colangelo Defendants. (Motion Seq. No. 002)
Defendants St. Francis Hospital, Catholic Health Services of Long Island, and CHS Physician Partners, P.C. (collectively "SFH Defendants") move pursuant to CPLR §3212 for partial summary judgment. Relevant FactsSixty-seven-year-old Joel Holland, M.D. was a cardiologist employed by St. Francis Hospital who presented to the emergency room at St. Francis Hospital on September 6, 2019, at approximately 8:36 a.m. complaining of chest pain. Blood work drawn at 8:58 a.m. Nitroglycerin was ordered. The EKG performed at 9:01 a.m. was read as "Sinus Tachycardia Marked ST Abnormality, Possible Lateral Subendocardial Injury. Abnormal ECG." Dr. Holland was admitted to the hospital under the care of interventional cardiologist Richard Shlofmitz, M.D. At 9:57 a.m. blood work results showed elevated troponin levels.
At 5:09 p.m., Dr. Holland was taken to the cardiac catheterization lab where he underwent a cardiac catheterization performed by Dr. Shlofmitz at 6:56 p.m. The cardiac catheterization revealed an ejection fraction of 25%. The coronary angiography showed a 95% occlusion of the left anterior descending artery, a 95% diagonal stenosis, and 95% occlusion involving the obtuse marginal arteries of the circumflex. The right coronary artery was 100% occluded with collateral circulation. Dr. Shlofmitz determined that Dr. Holland had severe ischemic cardiomyopathy and recommended coronary artery bypass grafting.
Dr. Shlofmitz contacted Dr. Colangelo, a board-certified cardiothoracic surgeon employed by St. Francis Hospital at approximately 8:30 p.m. regarding the coronary bypass grafting. Based on the conversation, the coronary artery bypass grafting surgery was scheduled for Monday, September 9, 2019. Dr. Colangelo was to see the patient in the morning of September 7, 2019 to evaluate the patient. 
A post catheterization order to monitor the patient was in place. At 10:09 p.m., Dr. Holland was transferred to the medical/surgical floor. On the medical/surgical floor, Dr. Holland was wearing a remote monitor to record his heart rate and rhythm. On September 7, 2019 at 4:47 a.m., Dr. Holland went into cardiac arrest. CPR was started and a code blue was called. Critical Care Attending physician, Dr. Sharif arrived at Dr. Holland's bedside and on arrival, Dr. Holland's heart rate was in the 20's, he did not have a pulse and no blood pressure. Dr. Holland was revived, the heart rate came back up into the 100's. Dr. Holland was awake, diaphoretic and complained of chest pain. 
Post-resuscitation care was started including the administration of a vasoconstrictor to raise blood pressure. Dr. Shlofmitz was notified, and he requested that Dr. Colangelo be notified. Dr. Holland was transferred to the cardiac thoracic surgery ICU.
Dr. Colangelo was contacted and advised of the situation. Dr. Colangelo called the nursing supervisor to call the team for emergency coronary bypass surgery x 4. Dr. Colangelo spoke to Dr. Holland about the procedure and Dr. Holland signed the consent form. Dr. Holland was taken to the operating room and anesthesia was started at 6:25 a.m. At 6:41 a.m., Dr. Holland went into cardiac arrest. The surgery was started at 6:55 a.m. Bypass was started at 7:12 a.m. The coronary bypass surgery performed by Dr. Colangelo was completed at 3:20 p.m. Dr. Holland was taken to the Cardio Thoracic ICU intubated and on ECMO (Extra Corporeal Membrane Oxygenation) and multiple vasopressor support.
Dr. Holland was unresponsive after the surgery without meaningful brain activity due to prolonged oxygen deprivation. Dr. Holland never regained consciousness. Neurological evaluations showed findings consistent with clinically suspicious anoxic brain injury suggestive of irreversible brain damage. Life support was terminated on September 20, 2019, at 9:32 a.m. Dr. Holland passed away at 9:46 a.m. On autopsy, the cause of death was anoxic brain injury from cardiovascular and pulmonary complications following a coronary artery bypass graft surgery for treatment of acute coronary syndrome due to acute myocardial infarction due to severe coronary artery atherosclerosis. 
Motion for Summary Judgment — Miano Defendants — Motion Seq. No. 001
The allegations against Dr. Milano, an employee of Progressive Emergency Physicians, PLLC, center on care and treatment rendered in the emergency department at St. Francis Hospital on September 6, 2019. Milano Defendants' motion is supported by the expert opinion of Mark Silberman, M.D., a New York State licensed physician Board Certified in Emergency Medicine, Internal Medicine, Pulmonary Medicine, and Critical Care Medicine. According to Dr. Silberman, Dr. Holland had longstanding cardiac risk factors and advanced chronic cardiac disease that had not been properly evaluated or treated prior to September 2019.
Dr. Silberman states that Dr. Holland arrived in the emergency department at 8:36 a.m. Dr. Milano was at the patient's bedside by 9:02 a.m. with preliminary laboratory tests, EKG and chest x-ray already ordered. Based on the EKG and the patient's history, Dr. Shlofmitz' service was immediately contacted for an emergency evaluation. Nitroglycerin was ordered for chest pain. By 9:22 a.m., NP Donna Ramharrack evaluated the patient and admitted Dr. Holland to Dr. Shlofmitz' service. Dr. Shlofmitz co-signed the note at 9:57 a.m. Dr. Silberman takes the position that from that point forward, the patient was now under the care of Dr. Shlofmitz' service. 
According to Dr. Silberman, Dr. Milano properly did not order anticoagulants or aspirin, since the interventional cardiology team would make the proper determination balancing the bleeding risks with potential interventions such as interventional cardiac procedures or cardiac surgery. Dr. Shlofmitz testified that once he assumed the care of the patient, the responsibility for ordering medications such as Heparin and aspirin rested with him. 
As to the claim of failure to ensure documentation of the patient's response to the nitroglycerin drip, Dr. Silberman points out that the nitroglycerin drip was ordered at 9:10 a.m. and by 9:22 a.m. Dr. Holland was already admitted to the cardiology service. At that time, Dr. Milano was no longer directing the patient's care. The same is true of any claim with regard to the troponin results which were received at 9:57 a.m. after the transfer of the patient's care to the interventional cardiology team who were evaluating the patient for acute coronary syndrome.
Dr. Silberman concludes that Dr. Holland was properly evaluated, appropriate laboratory [*3]studies conducted, testing and medications ordered, and the cardiology service promptly contacted and consulted in a timely manner. There is nothing that Dr. Milano and the emergency medicine providers did or failed to do that altered Dr. Holland's treatment and ultimate outcome.
In opposition, Plaintiff submits the expert affirmation of Frederick Randolph, M.D, M.B.A., a physician licensed to practice medicine in the Pennsylvania, New Jersey, and Delaware, Board Certified in Emergency Medicine. Dr. Randolph agrees that Dr. Holland had advanced coronary disease. Dr. Randolph disagrees with Dr. Silberman's opinion that Dr. Milano's responsibility and care of Dr. Holland ceased the moment that the patient was admitted to Dr. Shlofmitz' cardiology service. According to Dr. Randolph, Dr. Holland presented with anginal symptoms, abnormal EKG and elevated troponin which should have been recognized as acute coronary syndrome. Dr. Milano failed to review the troponin results which were returned at 9:57 a.m. when Dr. Holland was still in the emergency room. The failure to review the initial troponin level ordered was a departure from accepted emergency-medicine practice. According to Dr. Randolph, the troponin levels confirmed a diagnosis of acute myocardial infarction.
Dr. Randolph further opined that Dr. Milano departed from accepted medical practice by failing to administer aspirin at the time Dr. Holland presented to the Hospital. Anticoagulation medication should have been administered once the elevated troponin results were received. Dr. Randolph comments that deferring the treatment to the cardiology team is inconsistent with the standard of care.
Dr. Randolph states that it was a departure in Dr. Milano failing to ensure nursing monitoring and timely titration based on patient response of the nitroglycerin drip. Failing to assess Dr. Holland's pain response to the nitroglycerin infusion resulted in a missed opportunity to mitigate ongoing ischemia and infarction to Dr. Holland's heart. As to causation, Dr. Randolph opines that delay in therapy contributed to the myocardial injury and deterioration leading to the low ejection fraction and cardiac failure. The findings on autopsy confirm that aspirin and anticoagulation treatment would have mitigated the complications of native vessel thrombosis and severe global myocardial ischemia with infarction.
Motion for Summary Judgment — Colangelo Defendants — Motion Seq. No. 002
There is no claim against Dr. Colangelo that he improperly performed the coronary artery bypass surgery or that it was contraindicated. Dr. Colangelo claims that his interaction with Dr. Shlofmitz regarding Dr. Holland's status and possible need for cardiac surgery was in accord with accepted medical practice. Dr. Colangelo further argues that no physician-patient relationship existed at the time of the alleged negligence. Dr. Colangelo submits that what transpired during the brief telephone conversation between Dr. Shlofmitz and Dr. Colangelo did not give rise to a physician-patient relationship between Dr. Colangelo and Dr. Holland. Without the physician-patient relationship, there is no legal duty and no valid claim for medical malpractice. There was no direct communication with the patient, Dr. Holland. Other than the information provided by Dr. Shlofmitz, there was no assessment, treatment, diagnosis or instructions given to Dr. Shlofmitz or the patient. The telephone conversation is characterized as a mere discussion on a particular case between colleagues, one who was Plaintiff's treating physician and the other who had no connection to the Plaintiff. Specifically, there was no duty to participate in the patient's care through the night. Defendant Colangelo argues that Dr. [*4]Shlofmitz made it clear that it was his opinion that this was not an urgent case. Dr. Colangelo was not the on-call cardiothoracic surgeon. If Dr. Shlofmitz was of the opinion that the surgery was urgent or emergent, the on-call cardiothoracic surgeon should have been called. 
In further support of the motion, Colangelo Defendants submitted an expert affirmation of Scott L. Schubach, M.D., a New York State licensed physician, board certified in general surgery, critical care surgery, and cardio-thoracic surgery. Dr. Schubach points out that Dr. Colangelo was not the attending physician in charge of the patient's care on September 6, 2019 — September 7, 2019. Dr. Holland presented to the emergency department and after evaluation by cardiac interventionalist and Chairman of Cardiology at St. Francis Hospital, Dr. Shlofmitz, Dr. Holland underwent a cardiac catheterization and angiogram performed by Dr. Shlofmitz. 
It was within the standard of care when Dr. Shlofmitz called Dr. Colangelo, for Dr. Colangelo to rely on the information and clinical evaluation received from Dr. Shlofmitz concerning the patient, Dr. Holland. Dr. Schubach opines that it is not the standard of care for Dr. Colangelo to review the angiogram urgently or immediately come to the hospital to evaluate the patient based on the conversation with Dr. Shlofmitz. Dr. Shlofmitz provided the results of the cardiac catheterization and angiogram as well as information that the patient was hemodynamically stable, and his blood pressure was under control. The patient was comfortable and not experiencing chest pain. According to Dr. Schubach, the findings on the coronary angiography showing significant blockage of the coronary arteries was likely pre-existing for many years. 
Based upon the foregoing, Dr. Schubach confirms that it was within the standard of care to evaluate Dr. Holland for possible bypass surgery in the morning. It was further within the standard of care for Dr. Colangelo not to review the coronary angiogram/cardiac catheterization that evening and the claim that this alleged departure was the proximate cause of Dr. Holland's outcome is without merit. Dr. Colangelo had no role in the post-catheterization monitoring or medications for this patient. According to Dr. Schubach any claims whether the patient should have been put on therapeutics post-catheterization, or that a mechanical circulatory support device be placed before the cardiac surgery have no merit, since Dr. Colangelo was not to evaluate the patient for possible bypass surgery until the next morning.
Once Dr. Colangelo was contacted at 5 a.m. on September 7, 2019, Dr. Colangelo took the proper steps to arrange for the operating room and operating team to be ready as soon as possible. Commencing the procedure at 6:55 a.m. with anesthesia started at 6:25 a.m. was in accord with accepted medical practice.
Plaintiff opposes Colangelo Defendants' motion for summary judgment with arguments on the law and with expert opinion of Keith B. Allen, M.D. a physician licensed to practice medicine in Kansas and Missouri, Board Certified in General Surgery, Vascular Surgery, and Cardiothoracic Surgery.
Dr. Allen counters Dr. Schubach's opinion regarding Dr. Colangelo's role in the care and treatment of Dr. Holland. According to Dr. Allen, after Dr. Colangelo received the call from Dr. Shlofmitz, Dr. Colangelo had a duty to evaluate Dr. Holland for surgery. Once contacted by Dr. Shlofmitz, Dr. Colangelo departed from accepted medical practice by not reviewing Dr. Holland's records, catheterization study, emergency department records and blood work. According to Dr. Allen, Dr. Colangelo should have independently reviewed the cardiac catheterization and not relied on Dr. Shlofmitz' interpretation. This independent review was necessary to determine the decisions about the surgery and timing.
Dr. Allen opines that if Dr. Colangelo had reviewed the records and catheterization, Dr. Colangelo would have considered Dr. Holland for an urgent surgery on Friday evening. Dr. Allen is critical of Dr. Holland being placed on medical/surgical floor, since Dr. Holland needed more intensive care and monitoring. Dr. Colangelo should have placed Dr. Holland on a highly monitored floor. According to Dr. Allen, this is a shared responsibility between Dr. Colangelo and Dr. Shlofmitz. The standard of care required Dr. Holland to be on a heparin drip if the surgery was not taking place on Friday night. Dr. Allen in summary fashion states that the violations of the standard of care were a substantial contributing factor in causing injury to Dr. Holland.
Plaintiff argues that whether Dr. Holland and Dr. Colangelo had a physician-patient relationship is a question of fact for the jury. Plaintiff argues that a physician-patient relationship was established when Dr. Colangelo took the telephone call from Dr. Shlofmitz and actively engaged in the case. The physicians then made a mutual decision to wait for Dr. Colangelo to evaluate the patient the next morning to determine if and when surgery should be performed.
As to the Defendants' expert opinion, Plaintiff argues that Dr. Schubach never sets forth an opinion that the care and treatment provided to Dr. Holland between post-catheterization and pre-emergency surgery was appropriate. Plaintiff cites to Dr. Shlofmitz' testimony who did not believe that Dr. Holland's condition warranted going from the catheterization lab to the operating room however, Dr. Shlofmitz testified that it was a mutual decision to wait to the next morning to further assess Dr. Holland as to when he would have heart surgery. 
Motion for Partial Summary Judgment — SFH Defendants — Motion Seq. No. 003
SFH Defendants move for partial summary judgment on the issue of the monitoring of Dr. Holland at St. Francis Hospital during the post-catheterization period setting forth that the care and treatment was in accord with the standard of care and not the proximate cause in bringing about the cardiac arrest or death. SFH Defendants support their motion with an affirmation of Amit Uppal, M.D., a New York State licensed physician, Board Certified in Internal Medicine, Pulmonary Disease, and Critical Care Medicine. 
SFH Defendants point out that post catheterization, Dr. Holland remained in the recovery room until 10 p.m. and his vital signs were stable throughout. Once on the medical/surgical floor, Dr. Holland was placed on the telemetry device embedded in his hospital gown linked to alarms designed to alert staff in real time of any significant changes in heart rate or rhythm. According to Nurse Hughes, the overnight treating nurse, Dr. Holland was talking with his family, eating normally, verbalized no complaints, and the telemetry did not show any changes in heart rate or rhythm. At 4:47 a.m., Dr. Holland had the cardiac event which set off the alarm. Nurse Hughes responded, started CPR and called a code.
According to Dr. Uppal, Dr. Holland's placement in a telemetry unit was within the standard of care. It was further within the standard of care not to take Dr. Holland's vital signs every hour. Dr. Holland was under telemetry monitoring which alerts to any change in the patient's cardiac status. Dr. Uppal is also of the opinion that even if the vital signs were take every hour after 10 p.m., it would not have changed whether Dr. Holland had a heart attack at 4:47 a.m. Dr. Uppal opined that Dr. Holland's heart attack would not have been preceded by a change in vital signs. In Dr. Uppal's opinion, the lack of documented vital signs while on a monitored telemetry floor was not the cause of Dr. Holland's cardiac arrest. Dr. Uppal concluded [*5]that Dr. Holland's heart attack was caused by severe blockage in several of his coronary arteries and that the heart attack was an acute event not preceded by a change in vital signs. Any change in vital signs would occur at the time of the cardiac arrest. The allegation that there was a change in vital signs prior to the heart attack that went unnoticed is speculation. It is also speculation that a change in vital signs would have enabled the physicians to avoid or minimize the heart attack.
Plaintiff opposes SFH Defendant's motion submitting the affirmation of expert, Gregg Reis, M.D., a physician licensed to practice medicine in Pennsylvania and Missouri, Board Certified in Internal Medicine, with a subspecialty of Cardiovascular Diseases and Interventional Cardiology. Dr. Reiss counters Dr. Uppal's opinion, stating that the failure to take the vital signs as ordered by Dr. Shlofmitz was a departure from accepted nursing practice. Dr. Reiss further opines that it was a departure from accepted medical practice to put Dr. Holland on a standard medical/surgical floor with monitoring with a telemetry unit. With Dr. Holland's severe cardiac condition, the patient should have been monitored in a cardiac ICU or at least a cardiac step-down unit. 
Dr. Reis further countered Dr. Uppal's opinion stating that telemetry monitoring alone was departure from the standard of medical care. Telemetry will not detect changes in blood pressure, respiration, clinical condition and oxygen saturation. Dr. Reis concludes that the failure to take vital signs as ordered and putting Dr. Holland on the medical/surgical floor without proper monitoring were the cause of injury. 
Discussion
"The requisite elements of proof in a medical malpractice action are a deviation or departure from accepted practice and evidence that such departure was a proximate cause of injury or damage." (Feinberg v Feit, 23 AD3d 517, 518-519, 806 NYS2d 661 [2d Dept 2005]). "[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issue of fact." (Alvarez v Prospect Hosp., 68 NY2d 320, 324, 501 NE2d 572, 508 NYS2d 923 [1986]). To prevail on a motion for summary judgment in a medical malpractice action, a defendant must "make a prima facie showing either that there was no departure from accepted medical practice, or that any departure was not a proximate cause of the patient's injuries." (Matos v Khan, 119 AD3d 909, 910, 991 NYS2d 83 [2d Dept 2014]). Where the defendant meets its prima face burden as to both the departure element and the proximate cause element, "the burden shifts to the plaintiff to rebut the defendant's showing by raising a triable issue of fact as to both the departure element and the causation element." (Stukas v Streiter, 83 AD3d 18, 25, 918 NYS2d 176 [2d Dept 2011]).
As to Milano Defendants, a prima facie showing of entitlement to summary judgment was made on behalf of Milano Defendants through the medical records, deposition testimony, and expert opinion of Mark Silberman, M.D. Board Certified in Emergency Medicine. Dr. Silberman provided the opinion that while the patient was in the Emergency Department, Dr. Milano properly assessed the patient, ordered the appropriate tests and medications, called in the proper cardiac consultant which was within accepted standards of medical practice. Dr. Milano evaluated Dr. Holland at 9:08 a.m. and Dr. Shlofmitz' team was at the bedside at 9:22 a.m. Dr. Silberman also provided the opinion that there is nothing Dr. Milano did or did not do that altered Dr. Holland's treatment or outcome.
"Although physicians owe a general duty of care to their patients, that duty may be [*6]limited to those medical functions undertaken by the physician and relied on by the patient." (Abruzzi v Maller, 221 AD3d 753, 755, 199 NYS3d 190 [2d Dept 2023] quoting Cooper v City of New York, 200 AD3d 849, 851, 199 NYS3d 190 [2d Dept 2021]). "The existence and scope of a physician's duty of care is a question of law to be determined by the court." (Abruzzi v Maller, 221 AD3d at 755.) A physician may satisfy his or her duty of care by referring the patient to an appropriate specialist who is better equipped to handle the patient's condition. (See Doe v Schwarzwald, 142 AD3d 578, 579, 36 NYS3d 518 [2d Dept 2016]). Here, Dr. Milano's care and treatment of Dr. Holland is limited to his role as an emergency room physician.
Plaintiff failed to raise a triable issue of fact as to Dr. Milano's care and treatment of Dr. Holland. Plaintiff's expert, Dr. Frederick Randolph, opines that Dr. Milano's emergency department care as the emergency room physician should have overlapped with the care and treatment by Dr. Shlofmitz' interventional cardiac team. As a matter of law, Dr. Milano's duty of care was to provide emergency room treatment for the patient where Dr. Milano timely identified the cardiac issue and properly referred Dr. Holland to the appropriate specialist who took over the care and treatment of Dr. Holland within approximately fourteen minutes of Dr. Milano calling in the consultation. This was followed by the admission to the hospital under the care of Dr. Shlofmitz. Dr. Shlofmitz was present co-signing the note of the cardiac team at 9:57 a.m. The fact that Dr. Holland was still physically in the Emergency Department does not expand Dr. Milano's duty of care to the patient in terms of administration of medication, including anticoagulants and nitroglycerin which may be adverse to the plan of care of Dr. Shlofmitz and his cardiac team. Based upon the foregoing, summary judgment is granted to James Milano, M.D. and Progressive Emergency Physicians, PLLC.
Colangelo Defendants move for summary judgment on the grounds that there can be no claim for medical malpractice since there was no physician-patient relationship during the time period at issue and on the grounds that Dr. Colangelo's telephone conversation with Dr. Shlofmitz was in accord with accepted medical practice. Colangelo Defendants support the motion for summary judgment with medical records, deposition testimony and the expert opinion of Scott L. Schubach, M.D., board certified in general surgery, critical care surgery and cardio-thoracic surgery. 
"Liability for medical malpractice may not be imposed in the absence of a physician-patient relationship." (Thomas v Hermoso, 110 AD3d 984, 985, 973 NYS2d 344 [2d Dept 2013]). "A physician-patient relationship is created when professional services are rendered and accepted for purposes of medical or surgical treatment." (Mathura v Makaryus, 237 AD3d 808, 811, 231 NYS3d 569 [2d Dept 2025] quoting Thomas v Hermoso, 110 AD3d at 985). "An implied physician-patient relationship can arise when a physician gives advice to a patient, even if the advice is communicated through another health care professional." (Mathura v Makaryus, 237 AD3d at 811 quoting Thomas v Hermoso, 110 AD3d at 985).
Here, there are issues of fact as to whether a physician-patient relationship was established during the telephone conversation with Dr. Colangelo and Dr. Shlofmitz during the night of September 6, 2019. The deposition testimony of Dr. Colangelo and Dr. Shlofmitz raise issues of fact to be determined by the jury on this issue. It is a jury question whether the decision to hold off on Dr. Colangelo's evaluation until the next morning in light of the findings on the cardiac catheterization and angiogram as discussed with Dr. Shlofmitz is enough to create a physician-patient relationship.
As to the claims of medical malpractice, Colangelo Defendants established prima face [*7]entitlement to judgment as a matter of law on departure and causation with the expert opinion of cardiothoracic surgeon, Dr. Schubach. Dr. Schubach opined that Dr. Colangelo met the standard of care in relying on the opinion of Dr. Shlofmitz in terms of the patient's overall condition and clinical picture, and it was within the standard of care to rely on Dr.Shlofmitz and the cardiology service team to order post-catheterization monitoring. Dr. Colangelo's mutual plan was to evaluate Dr. Holland in the morning which was acceptable to Dr. Shlofmitz. It is noted that Dr. Shlofmitz did not contact the on-call cardiothoracic surgeon.
Plaintiff raised an issue of fact through the expert opinion of Keith B. Allen, M.D. Plaintiff's expert provides a contrary opinion that it was the standard of care for Dr. Colangelo to review the patient's studies to determine whether the patient's care was urgent particularly in light of his cardiac status. "Summary judgment is not appropriate in a medical malpractice action where the parties adduce conflicting medical expert opinions as '[s]uch credibility issues can only be resolved by a jury.'" (Smith v Sommer, 189 AD3d 906, 907, 137 NYS3d 99 [2d Dept 2020] quoting Feinberg v Feit, 23 AD3d at 519). Summary judgment is denied as to Dr. Colangelo based on issues of fact as to physician-patient relationship and based on conflicting expert opinions.
SFH Defendants seek partial summary judgment for the claims regarding monitoring of the patient post catheterization. SFH Defendants made a prima facie showing of entitlement to summary judgment with their submissions including the affirmation of Amit Uppal, M.D. who opined that the monitoring of Dr. Holland on the medical/surgical floor overnight from September 6, 2019 to September 7, 2019 was in accord with acceptable medical and nursing practice and the monitoring that was performed was not the proximate cause of Dr. Holland's 4:47 a.m. cardiac event. According to Dr. Uppal, the monitoring of vital signs prior to Dr. Holland's cardiac event would not have resulted in the prevention of the cardiac arrest or being alerted earlier of the impending heart attack.
Plaintiff raised an issue of fact through the submission of opposing expert opinion of Gregg Reis, M.D., setting forth that the nursing staff failed to follow the post catheterization Order of Dr. Shlofmitz. Monitoring the patient's vital signs including the blood pressure and respirations would show signs of the impending heart attack which caused injury to Dr. Holland. Credibility issues based on conflicting expert opinions can only be resolved by a jury. In light of the conflicting medical opinions submitted partial summary judgment is denied to the SFH Defendants.
Accordingly, it is hereby
ORDERED that the motion of James Milano, M.D. and Progressive Emergency Physicians, PLLC for CPLR §3212 summary judgment (Motion Seq. No. 001) is GRANTED, dismissing Plaintiff's Complaint against the foregoing Defendants; and it is further
ORDERED that the motion of Defendants Robert G. Colangelo, M.D. and Robert G. Colangelo, M.D., P.C. for CPLR §3212 summary judgment in favor of Dr. Colangelo and Robert G. Colangelo, P.C. (Motion Seq. No. 002) is DENIED; and it is further
ORDERED that the motion of St. Francis Hospital, Catholic Health Services of Long Island, and CHS Physician Partners, P.C. pursuant to CPLR §3212 for partial summary judgment (Motion Seq. No. 003) is DENIED; and it is further
ORDERED that the caption shall be amended as follows:
LAURA HOLLAND, as the Administrator of the Estate
of JOEL B. HOLLAND
Plaintiffs,
against
ST. FRANCIS HOSPITAL, CATHOLIC HEALTH
SERVICES OF LONG ISLAND, RICHARD A.
SHLOFMITZ, M.D., CHS PHYSICIAN PARTNERS,
P.C., ROBERTOG. COLANGELO, M.D., ROBERTO
G. COLANGELO, M.D., P.C., SAIRAH SHARIF, M.D.,
EDWARD F. LUNDY, M.D., ROBERT KATES, M.D.,
and NEW YORK CARDIOVASCULAR
ANESTHESIOLOGISTS, P.C.,
Defendants.
All relief not specifically granted herein is DENIED.
This constitutes the Decision and Order of the Court.
Dated: February 3, 2026
Mineola, New York
ENTER:
HON. CHRISTOPHER T. McGRATH
J.S.C